**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

BILLY M. GARMOU,

Plaintiff,

v. Case No. 15-12161

KONDAUR CAPITAL CORP., et al.,

Defendants.

____________________________________/

**OPINION AND ORDER (1) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S FEDERAL CLAIMS; (2) DISMISSING WITH PREJUDICE COUNT II, IV, V, VII, AND X; AND (3) TERMINATING THE REMAINING STATE LAW CLAIMS AS MOOT**

Now before the court is Defendants' "Motion to Dismiss and/or for Summary Judgment" (Dkt. # 10) seeking dismissal of Plaintiff's RESPA, FDCPA, and state law claims. The matter was fully briefed, and the court held a hearing on Tuesday, June 28, 2016. For the reasons detailed below, the court will grant Defendants' Motion with respect to Plaintiff's federal claims and dismiss or terminate all of the remaining state-law claims.

## I. BACKGROUND

In June 2009, Plaintiff Billy M. Garmou granted a mortgage on the real property located at 15811 Kingsway Drive, Macomb, Michigan 48044. (Dkt. 1-2, Pg. ID 17.) Over the next five and a half years, the mortgage changed hands several times, being originally assumed by Ross Mortgage Corporation, and subsequently assigned to JP Morgan Chase N.A. then to the Secretary for Housing and Urban Development and finally to Defendant Kondaur Capital Corporation. (Dkt. # 10, Pg. ID 91-92.) All

assignments were recorded in the Macomb County Register of Deeds. (*Id.* at Pg. ID 92.)

In 2013, Plaintiff sought and was awarded a loan modification from Chase due to financial hardship. (Dkt. # 13, 273-74.) The agreement lowered both his monthly payment and overall interest rate, (*Id.*), but Plaintiff was still able to pay his mortgage payments for only a few more months before defaulting. (Dkt. #10, Pg. ID 93.) Shortly thereafter, Plaintiff was diagnosed with cancer and began chemotherapy. (Dkt. # 13, Pg ID 274.) Unable to work, he informed Chase of his changed circumstances and was advised to submit a second loan modification application. (*Id.*) Plaintiff complied, and was informed that his second application was under review. (*Id.*)

On October 14, 2014, Plaintiff received a letter from Defendant Kondaur informing him that his mortgage had been "assigned, sold or transferred to Kondaur Capital." (*Id.* at Pg. ID 287.) In subsequent correspondence, Defendant advised Plaintiff that he would need to start the loan modification process over and resubmit the application and all of the necessary supporting documents directly to Kondaur. (*Id.* at Pg. ID 274.) He was also encouraged to apply to the State of Michigan's Hardest Hit Fund, "a federally-funded, statewide program" that gives "no interest, no payment, forgivable loan[s] . . . to help eligible homeowners pay their mortgage, property taxes, or condominium association dues." (*Id.* at 290.) Plaintiff applied to the program, and was initially approved to receive $30,000.00 in loan assistance to help save his home from foreclosure. (*Id.* at Pg. ID 275.)

On April 14, 2015, however, Plaintiff was notified that the state had determined that he was "ineligible for assistance" because his "lender ha[d] objected . . . due to

needing more income to qualify for their modification." (*Id.* at 291.) Two days later, Defendant Kondaur notified Plaintiff that it was initiating foreclosure procedures on the property. (*Id.* at Pg. ID 292.) On May 21, 2015, Plaintiff initiated this action in the Macomb County Circuit Court. (Dkt. #1-2.) Less than a month later, the case was removed to federal court. (Dkt. # 1.) On January 20, 2016, Defendants filed the instant Motion. (Dkt. # 10.)

## II. STANDARD

Because the court will rely on matters outside the pleadings, it will analyze Plaintiff's motion under the summary judgment standard. *See Briggs v. Ohio Elections Comm'n,* 61 F.3d 487, 493 (6th Cir. 1995). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted).

The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In evaluating a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . . credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

**III. DISCUSSION**

Plaintiff's Complaint contains ten separate counts: Count I—violations of the federal Real Estate Settlement Procedures Act ("RESPA"); Count II—violations of Michigan foreclosure laws; Count III—fraud in the inducement; Count IV—quiet title; Count V—slander of title; Count VI—promissory estoppel; Count VII—breach of covenant of good faith and fair dealing; Count VIII—relief from sheriff sale and/or set aside foreclosure; Count IX—violations of the federal Fair Debt Collection Practices Act ("FDCPA"); finally, Count X—declaratory and injunctive relief.

Defendants argue they are entitled to summary judgment on all counts. Each count will be addressed in turn.

**A. RESPA Violations**

"RESPA is a consumer protection statute, which Congress passed in order to reform the real estate settlement process. The statute was intended to ensure that consumers received information about settlement costs, and to protect them from high settlement fees and the potentially abusive practices of providers." *Augesnstein v. Coldwell Banker Real Estate LLC*, No. 10-191, 2011 WL 3837096, at *2 (S.D. Ohio Aug. 30, 2011). Among other things, the regulations implementing RESPA (known collectively as "Regulation X") require mortgage servicers to (a) evaluate loss mitigation

applications submitted more than 37 days before a foreclosure sale and notify the borrower in writing of its "determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage loan;" (b) inform borrowers of their appellate rights in the event that their "loss mitigation application is denied for any trial or permanent loan modification option;" and (c) abstain from foreclosing on the property until after the borrower either concludes its appeal, rejects all of the loss mitigation options offered by the servicer, or fails to perform under an agreement on a loss mitigation option. 12 C.F.R. 1024.41. Plaintiff claims that Defendant Kondaur has willfully and knowingly violated all three of these requirements.

Defendants argue that these regulations are inapplicable to the case at hand for three reasons: (1) because Plaintiff previously submitted a loan modification application to Chase; (2) because Plaintiff faxed his loan modification application to the wrong fax number; and (3) because Plaintiff's application was not timely submitted. Each argument will be addressed in turn.

**1. Effect of Previous Application to Defendants' Predecessor**

First, Defendants claim that Regulation X does not apply to them because "Plaintiff actually sought and *received* a loan modification in 2013" from Defendants' predecessor. (Dkt. # 10, Pg. ID 98.) The court disagrees. While it is true that "a servicer is only required to comply with the requirements of [12 C.F.R. 1024.41] for a single, complete loss mitigation application for a borrower's mortgage loan account," 12 C.F.R. 1024.41(I), the agency has interpreted this to apply to transferee servicers as well, stating that "a transferee servicer is required to comply with the requirements of section 1024.41 regardless of whether a borrower received an evaluation of a complete

loss mitigation application from a transferor servicer." 10 C.F.R. Pt. 1024, Supp. I. When interpreting administrative rules, courts give deference to an agency's construction of its own regulation, which is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). Defendants have provided the court with no reason to call into question the agency's interpretation of this subsection. Regardless, it is unnecessary to decide whether the agency's interpretation is clearly erroneous or inconsistent with the regulation because the court can decide the matter on other grounds.

Federal courts have consistently held that servicers must "comply with the requirements of section 1024.41 at least once *after* the section became effective." *Bennett v. Bank of Am., N.A.*, No. 16-cv-278-T-33TBM, 2016 WL 2610238, at *2 (M.D. Fla. May 6, 2016); *see also Bennett v. Bank of Am.*, 126 F. Supp. 871 (E.D. Ky. 2015). The loan modification application to which Plaintiff points was filed in 2013—several months before the RESPA loss mitigation regulations came into effect. It cannot alleve Defendants of their obligations under the regulations.

**2. Plaintiff Did Not Send An Application to Kondaur**

Nevertheless, Defendants are still entitled to summary judgment on the RESPA claims because Plaintiff has failed to provide any evidence to support his allegation that he submitted a completed loan modification application to Kondaur more than 37 days before the foreclosure sale. While Plaintiff claims that "[s]aid application was submitted by counsel for Plaintiff and the fax communication is time stamped as April 28, 2015 at 10:39," the undisputed evidence demonstrates that the application was neither faxed to

nor received by Kondaur. (Dkt. # 13, Pg. ID 281.) On the contrary, the application was faxed to (248) 205-4118, which all parties agree is not Kondaur's fax number. (*Id.* at Pg. ID 298.) Plaintiff claims that this fax number belongs to the loss mitigation department of Trott Law P.C, Defendant's previous counsel that was handling the foreclosure at the time, but has provided no evidence to support this conclusion. At oral argument, Plaintiff's counsel offered to have Trott Law provide a statement. The court finds this unnecessary as it will resolve this dispute on other grounds.

### 3. Plaintiff Did Not Submit the Application 37 Days Before the Foreclosure Sale

Even assuming that (248) 205-4118 *is* a valid fax number for Trott Law, Defendant was under no obligation to consider the loan modification application because it was submitted less than 37 days before the scheduled sheriff's sale. The pertinent regulation states that if

> a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale or conduct a foreclosure sale.

12 C.F.R. 1024.41. On April 24, 2015, Defendant Kondaur provided Plaintiff with its "first notice" of foreclosure, and scheduled a sheriff's sale to be held on May 22, 2015.[1]

---

[1] With the exception of two situations inapplicable to the case at hand, 10 C.F.R. § 1024.41(f) prohibits servicers from making the first notice of foreclosure until after a "borrower's mortgage loan obligation is more than 120 days delinquent." This period provides borrowers with "more time to submit loss mitigation application before a servicer initiates the foreclosure process." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10803 (Feb. 14, 2013). Because of this, nothing in Regulation X requires a servicer to schedule a foreclosure more than 37 days after the publication of the first notice to provide the borrower with another opportunity to submit a loss mitigation application. Such an approach was originally included in the proposed rule, but removed after the note and comment

(Dkt. # 10-19.) Four days later—just twenty-five days before the date of the announced sale—Plaintiff purportedly faxed Trott Law the disputed "loss mitigation application." (Dkt. # 13, Pg. ID 299.) This application was not timely filed, and therefore could not trigger the regulation's moratorium on foreclosure sales. Defendants were fully within their rights to foreclose on Plaintiff's property.

In his sur-reply, Plaintiff concedes that his application was submitted less than thirty-seven days before the foreclosure sale was originally scheduled, but argues that the regulation's prohibition on foreclosure is still applicable because it was submitted long before the sheriff's sale actually took place. (Dkt. # 17, Pg. ID 341.) After initially scheduling the sale for May 22, 2015, Defendants adjourned the sale on a week-to-week basis for more than year and did not formally conclude foreclosure proceedings until May 6, 2016. (Dkt. #17, Pg. ID 341.) In essence, Plaintiff is arguing that the plain language of the regulation indicates that what matters is the length of time between when the application was received and when the foreclosure sale was ultimately carried out—a time period which grew longer with each adjournment. Thus according to Plaintiff, while Kondour was under no obligation to review Plaintiff's application when it originally received it, it accrued just such an obligation after adjourning the sale for the second time. The court does not agree.

As mentioned above, courts give deference to an agency's construction of its own regulation, which is "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow*

---

period. *See id.* at 10820-21.

*Valley Citizens Council*, 490 U.S. 332, 359 (1989) (quoting *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414 (1945))). The Supreme Court has invoked a "wide[] range of interpretive tools in determining whether an agency's construction is permissible" including the agency's "'intent at the time of the regulation's promulgation,' canons of statutory construction," and the "consistency of the agency's interpretation over time." Kevin M. Stack, *Interpreting Regulations*, 111 Mich. L. Rev. 355, 371-72 (2012) (quoting *Gardebring v. Jenkins,* 485 U.S. 415, 420 (1988)).

Subsection 1024.41(b)(3) states that the "determination of whether protections under this section apply to a borrower is made on the basis of the number of days between when a complete loss mitigation application is received and when a foreclosure sale occurs." 10 C.F.R. 1024.41(b)(3). While this language may appear at first blush to support Plaintiff's position, the subsection goes on to clarify that "such determination shall be made *as of the date a complete loss mitigation application is received.*" The Consumer Financial Protection Bureau has interpreted this subsection to mean the "protections under § 1024.41 that have been determined to apply to a borrower pursuant to § 1024.41(b)(3) remain in effect thereafter even if a foreclosure sale is later . . . rescheduled." 12 C.F.R. Pt. 1024, Supp. I. The necessary corollary to this interpretation is that a determination that the regulations' protections do not apply are similarly uneffected by a rescheduling of the foreclosure sale. Plaintiff has not argued that this interpretation is "plainly erroneous or inconsistent with the statue," nor does the court find it to be so. In fact, the Bureau's interpretation squares with the agency's original intent, consistent practice, and canons of statutory interpretation.

Both the Administrative Procedure Act and judicial precedent require agencies "to publish a detailed explanation of the grounds and purposes of the regulations, called a 'statement of basis and purpose'" or regulatory preamble. Stack, 111 Mich. L. Rev. at 360 (quoting 5 U.S.C. § 553(c) (2006)). These preambles typically include "extremely detailed rationales for, and explanations of their regulations," providing insight into the original intent of the agency, often on a provision by provision basis. *Id.* at 392. The statement of basis and purpose of Regulation X explains that "[subsection 1024.41(b)(3)] make[s] clear that *whether* certain foreclosure protections and other rights in the rule apply depends on the date for which a foreclosure sale was scheduled at the time of a borrower's complete application." Amendment to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 60,384 (Oct. 1, 2013) (emphasis added). "If the scheduled date later changes, the foreclosure protections," or lack thereof, "that arose at the time of the complete application *do not change*." *Id.* (emphasis added). The regulatory preamble also specifically interprets subsection 1024.41(g)'s deadline to refer to "days before a *scheduled or anticipated* foreclosure sale," rather than when it actually occurs. Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act, 78 Fed. Reg. 10805, no.148 (Feb. 14, 2013) (emphasis added). There is no indication that the agency has modified its interpretation of these provisions since the rule was originally promulgated.

An application of the standard canons of statutory interpretation also buttresses the Bureau's regulatory construction. The Supreme Court has said that "a statute must,

if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992). The same is true for regulations. If the court were to accept Plaintiff's argument (that the phrase "before a foreclosure sale" means when a foreclosure sale ultimately occurred rather then when it was scheduled), subsection 1024.41(b)(3)'s mandate that the determination of the regulation's applicability be made "as of the date a complete loss mitigation application is received" would have no effect.

Furthermore, it is "fundamental that a section of a [rule] should not be read in isolation from the context of the Whole [Regulation]." *Richards v. United States*, 369 U.S. 1, 11 (1962). Rather than "be guided by a single sentence or member of a sentence" the court looks "to the provisions of the whole law." *Id.* Here, the phrase "before a foreclosure sale" appears fourteen times in Regulation X. The agency has consistently interpreted this phrase to mean before a *scheduled* foreclosure sale. For example, 10 C.F.R § 1024.41(h) requires a servicer to "permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application" if the servicer received said application "90 days or more before a foreclosure sale." The Bureau clarifies this language in its statement of basis and purpose, and makes it clear that a "borrower may appeal a denial of loan modification program so long as the borrower's complete loss mitigation application is received 90 days or more before a scheduled foreclosure sale." Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act, 78 Fed. Reg. 10698 (Feb. 14, 2013).

Because the court does not find the Bureau's interpretation to be "plainly erroneous or inconsistent with the statute," it will defer to the Bureau's construction of

Regulation X. The court grant this aspect of Defendants' Motion.

**B. FDCPA Claims**

In Count IX, Plaintiff avers that by scheduling a sheriff's sale of the property, Defendants violated numerous sections of the FDCPA, "including but not limited to, sections 1692f(1), 1692d(5), 1692e, 1692e(10), and 1692(g)(b) [sic]." (Dkt. # 1-2, Pg. ID 32.) As an initial matter, the court will grant summary judgment forthwith on all claims except that brought under section 1692g. These other sections prohibit

- the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1);
- "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," *id* at § 1692(d)(5);
- the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* at § 1692e; and
- the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* at § 1692e(10).

Plaintiff has not pleaded, let alone provided any evidence to support, allegations sufficient to suggest Defendants violated any of the aforementioned sections. Accordingly, there is no genuine issue of material fact. *Yaldo v. Homeward Residential, Inc.*, 622 F. App'x 514, 516 (6th Cir. 2015) ("[A] complaint that cannot survive a motion to dismiss would not survive a motion for summary judgment.").

Likewise, section 1692g(b) provides, in pertinent part,

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed potion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the

> original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). It is undisputed that on April 28, 2016, Plaintiff's counsel mailed a letter to Defendants disputing the validity of the mortgage and requesting verification of the debt. (Dkt. # 10-17, Pg. ID 218.) But Plaintiff's claim that "*[t]hereafter*, Defendant did publish the notice of foreclosure and a sheriff sale date of May 22, 2015 was set" is unsubstantiated by the record. (Dkt. # 13, Pg. ID 285 (emphasis added).) The unchallenged evidence clearly indicates that Defendants published the notice of foreclosure—and scheduled the sheriff sale—on April 24, 2015: four days *before* Plaintiff sent the letter disputing the debt. Upon receipt of Plaintiff's letter, Defendants adjourned the foreclosure sale, and provided verification of the debt in writing on May 27, 2015. (Dkt. # 10-18, Pg. ID 222; Dkt. # 14, Pg. ID 314.) Because the statute does not require the debt collector to "cease collection of the debt" until *after* it has received written notification that the debtor disputes it, Defendants' publishing of the notice of foreclosure and scheduling of the sheriff sale were not improper.

To the extent Plaintiff is alleging that Defendants' "week-to-week" adjournments of the sheriff sale somehow violates the statute, the court disagrees. "Plaintiff points to no authority standing for the proposition that adjourning a foreclosure by advertisement constitutes such improper collection activity and the [court] cannot fathom how an adjournment of foreclosure could possibly be construed as such." *Taylor v. Countrywide Home Loans*, No. 08-13258, 2010 WL 750215, *14 (E.D. Mich., March 3, 2015) (Murphy, J.). Accordingly, the court will grant this aspect of Defendants' Motion.

**C. State Law Claims**

As an initial matter, the court will dismiss Counts II, IV, V, VIII, and X with prejudice. Plaintiff has explicitly withdrawn Count II ("Violations of Michigan Foreclosure Laws"), Count IV ("Quiet Title"), and Count V ("Slander of Title), (Dkt. # 13, Pg. ID 281, 283-84), and failed to respond to Defendants' arguments with respect to Counts VII ("Relief from Sheriff Sale and/or Set Aside Foreclosure") and X ("Declaratory and Injunctive Relief"). "It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Rouse v. Caruso,* No. 06-10961, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011) (quoting *Hopkins v. Women's Div., Gen. Bd. Of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003)). The court will therefore grant Plaintiff's Motion with respect to these claims.

Additionally, during oral argument, Plaintiff's counsel acknowledged that should the court dismiss his client's federal claims, the remaining state law claims would be rendered moot. Having concluded that Defendants are entitled to summary judgment on Plaintiff's RESPA and FDCPA claims, the court therefore will terminate Counts III ("Fraud in the Inducement"), VI ("Promissory Estoppel"), and VII ("Breach of Covenant of Good Faith and Fair Dealing") as moot.

## III. CONCLUSION

IT IS ORDERED that Defendants' Motion for Summary Judgment (Dkt. # 13) is GRANTED with respect to Plaintiff's federal claims. (Counts I and XI).

IT IS FURTHER ORDERED that Counts II, IV, V, VIII, and X of Plaintiff's Complaint (Dkt. # 1) are DISMISSED WITH PREJUDICE.

IT IS ALSO ORDERED that Plaintiff's remaining state-law claims are

TERMINATED as moot. (Counts III, VI, and VII).

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: June 30, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2016, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522